UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LE THI BUI,                          )
                                     )
                    Plaintiff,       )
                                     )        CIVIL ACTION
          v.                         )        NO. 17-11128-WGY
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner, Social          )
Security Administration,             )
                                     )
                    Defendant.       )
                                     )

YOUNG, D.J.                                   September 28, 2018

**MEMORANDUM & ORDER**

## I.   INTRODUCTION

Pursuant to the Social Security Act, 42 U.S.C. § 405(g), Le
Thi Bui ("Bui") brings this action and moves to reverse or
remand the Acting Commissioner of Social Security's (the
"Commissioner") decision denying her supplemental security
income under the Social Security Act.  The Commissioner cross-
moves pursuant to the same Act, seeking to affirm the decision.

Bui asserts that the hearing officer's decision should be
reversed or remanded because it is legally erroneous and not
based upon substantial evidence.  Mem. Law Supp. Pl.'s Mot.
Reverse Or Remand Decision Acting Commissioner ("Pl.'s Mem.") 1,
ECF No. 16.  The Commissioner asserts that the decision is

[1]

supported by substantial evidence and should be affirmed.  Mem.
Law Supp. Def.'s Mot. Affirm Commissioner's Decision ("Def.'s
Mem.") 1, ECF No. 21.  For the reasons explained below, the
Court remands the case for further proceedings and denies the
motion to affirm.

## A.  Procedural History

On July 24, 2014, Bui applied for disability insurance
benefits and supplemental security income.  Administrative
Record ("Admin. R.")[1] 22, 180, ECF No. 12.  The Social Security
Administration initially denied Bui's request for both benefits.
Id. at 22.  Bui only appealed the supplemental security income
denial.  Id.  On December 17, 2015, a hearing was held upon
Bui's request.  Id. at 22, 47, 116, 140.  Both Bui and a
vocational expert testified at the hearing.  Id. at 47.

On March 28, 2016, the hearing officer denied Bui's request
for supplemental security benefits.  Id. at 19, 41.  The hearing
officer found that Bui's vertigo, depression, anxiety, and post-
traumatic stress disorder ("PTSD") were severe.  Id. at 24.
Nevertheless, the hearing officer also found that her
impairments did not equal the severity of the impairments listed
in Appendix 1 of the Social Security Regulations, 20 C.F.R. Part
404, Subpart P.  Id. at 26.  Finally, he found that Bui could

---

[1] This opinion cites to the continuously paginated
administrative record.

"perform a full range of work," with the exception of "climbing ropes, ladders, and scaffolds; and frequently stooping, kneeling, crouching, and crawling." Id. at 28. The hearing officer further recommended that Bui should also avoid "concentrated exposure to vibration" and "exposure to unprotected heights." Id. He concluded that Bui could perform simple tasks and could maintain her concentration for two-hour periods in an eight-hour work day. Id. On April 19, 2017, the Social Security Administration Appeals Council denied review of the decision. Id. at 1.

On June 16, 2017, Bui filed an action in this Court to reverse or remand the Commissioner's decision. Compl. 1, ECF No. 1. Bui also requested attorneys' fees and additional and alternative equitable relief. Id. at 5. On September 29, 2017, the Commissioner filed an answer, ECF No. 11, and the Administrative Record. On November 9, 2017, Bui filed a motion to reverse or remand the Commissioner's decision. Pl.'s Mem. 1. The Commissioner subsequently filed a cross-motion seeking to affirm the hearing officer's decision on January 18, 2018. Def.'s Mem. 1. Bui replied to the Commissioner's motion on January 30, 2018. Reply Mem. Opp. Def.'s Mot. Affirm Commissioner's Decision ("Reply Mem.") 1, ECF No. 24. On May 8, 2018, this Court heard oral argument and took the matter under advisement. Electronic Clerk's Notes, ECF No. 30.

## B.    Factual Background

Bui is a 50-year-old woman who was born in Vietnam on June 4, 1968. Admin. R. 205; Reply Mem. 1. Bui completed the fifth grade in Vietnam and does not speak or understand English. Admin. R. 53, 211. In 1990, Bui attempted to flee from Vietnam to Thailand. Id. at 281. While traveling through Cambodia, Khmer Rouge soldiers sexually assaulted and tortured Bui. Id.; Reply Mem. 1. In 1998, Bui moved to the United States and eventually became a naturalized citizen. Admin. R. 166, 180, 626. From 1999 to 2000, she worked as a paper assembler and binder in an office. Id. at 211. In 2012, she worked for a couple of months as a house cleaner for a maid company. Id. Finally, from September 2013 until August 2014, she worked part-time as a cleaner in a nail salon. Id. In a function report filed in 2014, Bui describes other short-term jobs she had from 2004 to 2014. Id. at 225-32. Bui has not engaged in substantial gainful activity since leaving her job in 2000 as a paper assembler and binder. Reply Mem. 3 n.9. In 2014, she stopped working completely. Admin R. 24.

According to Bui and her doctors, she suffers from various mental and physical conditions. Id. at 281, 764. Her mental conditions include PTSD, depression, and anxiety. Id. at 281, 627. Physically she suffers from chronic headaches, vertigo,

back and knee pain, shoulder pain, Hepatitis B, and a hand tremor. Id. at 627, 764.

Bui filed two function reports in 2014 in which she described her daily activities. Id. at 217-24, 248-55. Bui also gave a similar description of her daily activities in her testimony at the hearing. Id. at 63-65. Bui lives with and takes care of her daughter. Id. at 217-19; 248-50. Bui takes her daughter to school every day using public transportation and does a variety of household chores. Id. She goes shopping and visits the community park on a regular basis. Id. at 220-21; 251-52, 252. She sometimes watches movies. Id. at 217, 248.

### 1. Physical Impairments

Tuong Van Nguyen, M.D. ("Dr. Nguyen") has been Bui's primary psychiatrist. See, e.g., id. at 627. Dr. Nguyen diagnosed Bui with severe PTSD, due to her repeated abuse by Khmer Rouge soldiers. Id. at 637. She also suffers from anxiety and depression. Id. at 628. Dr. Nguyen indicated that Bui's PTSD started in 1999, though he first diagnosed her in 2003. Id. at 630. Dr. Nguyen has continuously diagnosed Bui with a Global Assessment of Functioning ("GAF") score of 60, which indicates moderate symptoms. See, e.g., id. at 578, 581, 638, 690. According to the record, Dr. Nguyen started treating her with medications (fluoxetine and klonopin) in 2010. Id. at 750. On July 15, 2014, Bui told physician Julita Mir ("Dr.

Mir") that she had stopped taking those medications "due to fatigue" and was feeling better. Id. at 570.

Moreover, Bui alleges that she has a hand tremor which, according to Dr. Nguyen, would keep her from doing "fine manipulation." Id. at 1087. Steve Vogel, N.P. ("Vogel"), Madhusudan Thakur, M.D. ("Dr. Thakur"), Jeffrey Jampel, Ph.D. ("Dr. Jampel"), other medical professionals who examined Bui, and Chau Nguyen ("Ms. Nguyen"), a social worker, observed the tremor in their examination records. Id. at 618, 728, 867, 959, 971, 973, 1023. Additionally, in 2014, neurologist Maria Stefanidous, M.D. ("Dr. Stefanidous"), observed the tremor and prescribed a beta-blocker to help with the headaches and the tremor. Id. at 973.

Bui also alleges that she suffers from chronic back, neck, and shoulder pain. Id. at 703, 750. She has spinal stenosis at the C5-C6 spinal segment. Id. at 750. A 2008 Social Security decision denying Bui's request for supplemental security income, mentions two MRIs. Id. at 82. The first MRI showed a congenitally narrowed spinal canal at the C4-C5 segment. Id. A second MRI showed mild tendinopathy. Id. Bui had an epidural in 2010 and was prescribed Cyclobenzaprine in 2015 for her neck and back pain. Id. at 725, 771. Dr. Nguyen documented Bui's neck pain in her visits. See, e.g., id. at 689, 750, 843, 867, 903. In 2015, Nsa Henshaw, M.D., a provider at Dorchester

House, observed a tenderness of the left cervical paraspinal muscles and left trapezius. Id. at 705.

Bui also has a history of chronic knee pain. Id. at 474, 886, 1024. In 2011, Vogel stated that Bui had "long standing chronic pains of both knees that do not allow her to bend, squat or climb stairs frequently." Id. at 866. Dr. Mir prescribed tramadol for her knee pain. Id. at 886. In 2014, Julie Crosson, M.D., diagnosed Bui with bilateral leg pain and left knee pain. Id. at 474. In 2015, Dr. Thakur, on behalf of the Disability Evaluation Services, stated that her difficulties in walking and climbing were functional limitations. Id. at 1024. In 2015, Hai Dang Truong, N.P. ("Truong"), stated that Bui "gets dizzy w[ith] bending [and] twisting" and requires breaks from work every two hours. Id. at 748-49.

Bui also asserts that she has chronic headaches and vertigo. Id. at 290, 370, 903. In 2012, Bui complained of dizziness for the first time to Dr. Nguyen. Id. at 903. Vogel suggested that her positive Dix-Hallpike test could indicate vertigo. Id. at 370. Richard Grentzenberg, M.D. ("Dr. Grentzenberg"), an otolaryngologist who evaluated Bui, noted that she felt dizzy during the Dix-Hallpike test and felt unsteady during the Romberg test. Id. at 290. Also, an audiology evaluation showed a "mild to moderate" sensorineural hearing loss in Bui's left ear. Id. at 301. After an MRI in

2014, Dr. Grentzenberg concluded that Bui's dizziness was "more a feeling of fatigue and faint feeling." _Id._ at 961. In 2015, Bui started physical therapy to help with her dizziness. _Id._ at 1072-76. Alison Hinsberger, Bui's physical therapist, described Bui experiencing blurriness and double vision during exams. _Id._

## 2. Healthcare Professionals' Opinions

### _Dr. Nguyen's opinion_

Dr. Nguyen stated that he has been Bui's psychiatrist since September 2003.[2] _Id._ at 1082. Dr. Nguyen concluded that Bui could not deal with normal work stress and had difficulty remembering detailed instructions. _Id._ at 1085, 1087. He indicated that she would have marked limitations dealing with skilled and semi-skilled work and that she would get agitated when working under pressure. _Id._ at 1086-87. Dr. Nguyen also indicated that he anticipated Bui's conditions or treatment would lead to her absence from work about three times per month. _Id._ at 1084. Dr. Nguyen indicated that Bui would additionally have "difficulties in maintaining concentration, persistence or pace," and that Bui would need too many breaks and would have a marked limitation in concentrating for two straight hours. _Id._ at 1085-87. He also stated that the need to make quick decisions or dealing with customers could increase the level of

---

[2] The Commissioner asserts that Dr. Nguyen's first treatment on the record is from January 2010. Def.'s Mem. 5.

[8]

her impairments. Id. at 1087. Dr. Nguyen concluded that Bui's psychiatric impairments would prevent her from working an eight-hour work day. Id. at 1085.

*Dr. Jampel's opinion*

State Disability Determination Services sent Bui to a psychiatric consult with Dr. Jampel. Id. at 618. He noted a "mild tremor" in both hands. Id. He concluded that Bui had "no evidence of psychosis" and that she did not seem "markedly depressed or anxious." Id. at 621. According to Dr. Jampel, Bui's cognitive capacities would be in the average range, and she could have some difficulties concentrating. Id. at 620. He also concluded that Bui could carry out instructions and could get along with others. Id. at 621. Finally, he reported that "her medical condition precludes her from managing the pressure of a regular work setting." Id.

*Dr. Manansala's opinion*

Disability Evaluation Services sent Bui to a clinical diagnostic interview with psychologist Linda Manansala ("Dr. Manansala"). Id. at 1015. Dr. Manansala reported that during the interview "the client's mood appeared sad, tearful, but pleasant." Id. at 1019. According to her, Bui may have difficulty maintaining "focus and concentration in a work setting." Id. Dr. Manansala also reported that Bui's ability

to work might depend on her physical status and that it might be difficult for Bui to initiate social contact.  Id. at 1020.

*Dr. Thakur's opinion*

Disability Evaluation Services also sent Bui to a physical examination with Dr. Thakur.  Id. at 1022.  He found that Bui had a "coarse tremor" in both hands.  Id.  Bui also had difficulties in walking and in climbing stairs.  Id. at 1024.

*Dr. Keuthen's opinion*

Bui was also examined by psychologist Dr. Nancy Keuthen, Ph.D. ("Dr. Keuthen") of Disability Determination Services.  Id. at 99.  Dr. Keuthen ordered an examination of Bui in October 2014.  Id.  She concluded that Bui could never climb ladders and frequently stoop, kneel or crouch.  Id. at 101.  She additionally recommended that Bui avoid concentrated exposure to vibration.  Id. at 102.  Dr. Keuthen found that Bui would be moderately limited in carrying out detailed instructions and maintaining concentration for extended periods.  Id. at 103. Bui would also have limitations in working at a consistent pace, without unreasonable rest periods.  Id.  She concluded that Bui could work for two hour periods, during an eight hour day "in an unpressured setting."  Id.

*Truong's opinion*

Truong is a nurse practitioner who had one appointment with Bui in 2015.  Id. at 745.  Truong said that Bui had a marked

limitation dealing with stress and that she could sit or stand for less than two hours. Id. at 747. Truong also said that Bui would be absent from work more than three times a month because of her impairments. Id. at 749.

*Nguyen's opinion*

In May 2015, Bui began seeing Nguyen, a social worker, for individual counseling. Id. at 685. Nguyen described Bui as depressed, teary and anxious during their meetings. Id. at 686, 692, 728, 740. Nguyen helped Bui to develop coping techniques. Id.

### 3. Testimony

On December 17, 2015, Bui testified at an administrative hearing before the hearing officer. Id. at 47. She was represented by Anita Sanchez, senior paralegal at Greater Boston Legal Services. Id. at 50. Michael La Raia, a vocational expert, testified by phone. Id. at 49-50.

*Bui's testimony*

Speaking through an interpreter, Bui testified that she could not speak or read English. Id. at 53. The last full-time job that she had was at a paper company in 2000 where she would bind papers. Id. at 55. She earned $22,686 annually at that time. Id. Her last job was at a nail salon. Id. at 54. She stopped working completely in 2014. Id. She now lives on

welfare and food stamps, receiving a little more than eight
hundred dollars a month. Id. at 53.

Bui testified that during her escape from Vietnam as a
refugee, she was beaten. Id. at 56. She explained that this
traumatic experience produced a combination of impairments. Id.
at 56-57. Bui said that her hand tremor affected her work
because she could not carry things without dropping them and
breaking them. Id. at 57. She said that she had just had a
hysterectomy. Id. She added that she had a constant pain in
her knees, which she would rate as five on a scale of one to
ten. Id. at 58. She was prescribed medication and physical
therapy for this pain. Id. She testified that she had quit
those treatments because she was sick and that the doctors were
now focusing more on her left shoulder pain, for which she was
undergoing physical therapy. Id. at 59. Also, she declared
that she had been diagnosed with vertigo, which made her
experience dizziness four to five times a day and that she had
to lay down for three to four hours. Id. at 60. She was
getting physical therapy for her dizziness but no medication had
been prescribed. Id. She also stated that she experienced
headaches two to three times a day for two to three hours. Id.
at 62.

Bui testified that she had been diagnosed with PTSD,
anxiety and depression. Id. These conditions, she said, were

produced by her traumatic refugee experience. Id. She stated
that she felt sad all the time and experienced nightmares every
night, during which she hears Khmer Rouge soldiers shooting at
her. Id. at 62-63.

Bui also testified that she had a driver's license and a
car. Id. at 63. She drives her daughter to the supermarket
every three weeks. Id. She also takes the subway downtown for
grocery shopping. Id. She said that she has a boyfriend who
helps her with chores around the house. Id. at 64. She cleans
her house every two to three months for periods of fifteen
minutes. Id. at 64-65. She cooks twice a week. Id.

She declared that she went to California for a month to
visit a refugee friend in June 2015. Id. at 66. She said that
she could walk for a maximum of ten minutes before feeling dizzy
and could sit for a maximum of seven to ten minutes before her
knees started to hurt. Id. at 67. She could carry comfortably
three pounds. Id. She did not have any relatives or friends in
the country, besides the friend she visited once in California.
Id.

Bui said that she takes the subway to take her daughter to
school every day. Id. at 68. During a typical day, after
taking her daughter to school, she would lay down for the rest
of the day. Id. She said that she could not use a computer or

read because it makes her feel dizzy. Id. at 68-69. She has Hepatitis B and feels very tired because of it. Id. at 69.

Additionally, Bui said that she has difficulty concentrating and occasionally suffers from crying spells and mood swings. Id. at 70. She is afraid of shooting and crowded places. Id. Her medications cause her to feel drowsy when she takes them. Id. at 70-71.

*Michael La Raia, vocational expert*

The vocational expert testified that from Bui's past work history, her only relevant job had been the one as a copy machine operator and binder. Id. at 72. He said that that job included two different titles, which were both at the light and unskilled level. Id. at 72-73.

The hearing officer presented three different hypotheticals to the vocational expert. Id. at 73. The first hypothetical was whether any jobs existed for a person of Bui's age, education and experience, who can never climb, who had to avoid exposure to heights, whose work was limited to simple tasks and who could maintain concentration for two hours at a time in an eight-hour day. Id. The vocational expert said that the person could perform Bui's past relevant work and that there were other jobs in the national economy that met those requirements. Id. at 73-74. Then, the hearing officer asked about a second hypothetical, in which that same person would be absent three

[14]

times a month.  Id. at 74.  The vocational expert answered there
would be no jobs that would meet those requirements.  Id. at 74-
75.  Finally, the hearing officer inquired about a third
hypothetical, in which that same person would be off-task ten
percent of the time and having to take unscheduled breaks.  Id.
at 75.  The vocational expert answered that combination of
limitations would preclude all work.  Id.

## II.  THE HEARING OFFICER'S DECISION

### A.  Supplemental Security Disability Standard

Under the Social Security Act, an individual is disabled if
she is unable "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment."  Bowen v. Yuckert, 482 U.S. 137, 140 (1987)
(quoting 42 U.S.C. § 423(d)(1)(A)).  The hearing officer
conducts a five-step evaluation to determine whether a claimant
is disabled.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(4)(i)-
(v).  The hearing officer (i) considers whether the claimant is
engaged in substantial gainful activity; (ii) if not, he
analyzes whether the claimant has a severe impairment; (iii) if
so, he moves on to whether the impairment meets or medically
equals an impairment listed in the Social Security Regulations;
(iv) if it does, he examines whether the claimant has the
residual functional capacity to perform her past relevant work;
and (v) if the claimant lacks that capacity, he analyzes whether

the impairment prevents the claimant from doing any other work, considering the claimant's age, education, and work experience. See Patterson v. Colvin, 95 F. Supp. 3d 104, 112 (D. Mass. 2015) (citing Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001)).

The applicant bears the burden of proof for the first four steps. Bowen, 482 U.S. at 146 n.5; Vega v. Colvin, 164 F. Supp. 3d 249, 256 (D. Mass. 2016). The burden shifts to the Commissioner at step five, where she must provide "evidence of specific jobs in the national economy that the applicant can still perform." Seavey, 276 F.3d at 5.

B. **Decision**

In his decision, the hearing officer determined that Bui was not disabled under the Social Security Act, and thus not entitled to supplemental security income. Admin. R. 22. The hearing officer outlined the five-step analysis, as promulgated by the Secretary of Health and Human Services, to determine whether Bui was disabled and thus entitled to benefits. Id. at 23-24.

At the first step, determination of whether the claimant was currently employed, the hearing officer found that Bui had not engaged in substantial gainful activity since 2014. Id. at 24. At the second step, the hearing officer determined that Bui's impairments of vertigo/dizziness, depression disorder, anxiety disorder, and PTSD were severe. Id. Then, the hearing

[16]

officer found that her status post-hysterectomy, hepatitis B,
and headaches were not severe impairments.  Id.  The hearing
officer found that the hand tremor was not established by
medical evidence and was only given as an observation or in
Bui's statements.  Id. at 26.  At the third step, the hearing
officer found that Bui's impairments or combination of them were
neither listed in the regulation nor were they as severe as the
listed impairments.  Id. at 26; see 20 C.F.R. § 404, subpt. P.,
app. 1 (list of impairments).

Before proceeding to step four, the hearing officer
analyzed Bui's residual functional capacity.  Admin. R. at 28.
The residual functional capacity refers to the claimant's
capability to perform work despite her impairments.  20 C.F.R.
§ 404.1520(e).  In this analysis, the hearing officer gave
weight to Dr. Nguyen's conclusion regarding Bui's limitation in
performing complex tasks and some limitations with her
concentration, persistence, and pace.  Admin. R. 38.  Then, he
gave "little weight" to the rest of Dr. Nguyen's opinion, and to
the opinions of Truong and Dr. Thakur.  Id. at 37-39.  The
hearing officer gave some weight to Dr. Jampel's report "to the
extent that the doctor reported there was no evidence of
psychosis, that the claimant presented as not markedly depressed
or anxious, that she would be able to carry out and remember
instructions, and that she would be able to get along

satisfactorily." Id. at 39.  He gave partial weight to Dr.

Manansala's conclusion and great weight to the Disability

Determination Services consultants' analysis, including that of

Dr. Keuthen.  Id.  The hearing officer found that Bui had "the

residual functional capacity to perform a full range of work at

all exertional levels," except "climbing ropes, ladders, and

scaffolds; and frequently stooping, crouching and crawling."

Id. at 28.  She should also avoid "concentrated exposure to

vibration" and "unprotected heights."  Id.  The hearing officer

found that Bui could perform simple tasks, concentrate for two

hours, and could work an eight-hour day and 40 hours per week or

a similar schedule.  Id.  At the fifth and final step, the

hearing officer decided that Bui could return to her past work

as a machine operator and binder and could perform various jobs

that exist in the national economy.  Id. at 40-41.

## III. ANALYSIS

Bui argues that the Court should reverse or remand the

hearing officer's decision for three reasons: it (1) improperly

weighed medical opinion evidence; (2) erroneously found that the

hand tremor was not a medically determinable impairment; and (3)

misevaluated Bui's pain and subjective symptoms.  Pl.'s Mem. 1.

The Commissioner responds that substantial evidence supports the

decision and so the Court should affirm.  Def.'s Mem. 1.  Both

parties agree that substantial evidence does not support the finding that Bui could communicate in English. Id. at 19.

### A.   Standard of Review

42 U.S.C. § 405(g) authorizes federal courts to review the Commissioner's final decisions. The Court must uphold the Commissioner's decision if it is supported by substantial evidence and lacks legal error. Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam). Substantial evidence is "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Waters v. Bowen, 709 F. Supp. 278, 280 (D. Mass. 1989).

The Commissioner resolves credibility issues, draws evidentiary inferences, and weighs conflicting evidence. Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). Therefore, the Court affirms a decision supported by substantial evidence "even if the record arguably could justify a different conclusion." See Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citing Lizotte v. Sec'y of Health and Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)).

**B. Weighing of Medical Opinions**

Bui alleges that the hearing officer committed legal error by giving little weight to part of Dr. Nguyen's opinion. Pl.'s Mem. 14. This error, Bui argues, led to an erroneous determination of her residual functional capacity. Id. at 17.

According to 20 C.F.R. § 416.927(d)(1), the Commissioner's decision whether or not a claimant is disabled must be supported by the record, including all medical opinions and evidence. To determine the weight given to a medical source, the hearing officer should consider whether the source has an examining or treatment relationship with the claimant; the length of any treatment relationship and frequency of examination; nature and extent of the treatment relationship; supportability; consistency; and specialization. Id. § 416.927(c)(1)-(6). Generally, hearing officers give more weight to the opinions of the treating physician because these medical professionals are "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence" that other objective sources cannot. See id. § 416.927(c)(1)-(2). If the treating physician's opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in [the claimant's] case" it will be given "controlling

weight." Id. § 416.927(c)(2). Hearing officers should also give more weight to examining physicians than to non-examining ones. Id. Non-examining opinions will be afforded weight to the extent that they are supported by medical explanations or findings and the record as a whole. Id. § 416.927(c)(2)-(4),(6). If a hearing officer does not give the treating physician's opinion controlling weight, he or she must explain the reasons for that decision. Id. § 416.927(c)(2).

### 1. Weight Given to Dr. Nguyen's Opinion

Dr. Nguyen was Bui's treating physician and found that Bui had marked limitations in her ability to understand, remember and carry out detailed instructions. Admin. R. 1085. He also found marked limitations in Bui's ability to maintain attention and concentration for at least two hours with four such sessions in a day, and in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. Id. at 1085-86. Dr. Nguyen concluded that due to her "psychiatric difficulties she is not able to perform [eight hours of] work per day." Id.

In his decision, the hearing officer afforded weight to Dr. Nguyen's opinion only to some extent. Id. at 38. The hearing officer gave weight to Dr. Nguyen's opinion on Bui's inability to perform complex tasks and her limitations on concentration, persistence and pace. Id. He gave the rest of

Dr. Nguyen's opinion "little weight." Id. at 39. The hearing officer found that Dr. Nguyen's other findings were inconsistent with substantial evidence on the record, including some of Dr. Nguyen's own treatment records. Id. at 38. The hearing officer particularly found inconsistencies with Bui's intact thinking process, her stable mood, consistent GAF score of 60, and daily activities. Id. at 39.

Bui alleges that the hearing officer did not weigh Dr. Nguyen's opinion appropriately and thus incorrectly evaluated her ability to function on a sustained basis. Pl.'s Mem. 11. Bui argues that dismissing part of Dr. Nguyen's medical opinion is legal error. Id. at 14. In response, the Commissioner argues that there is a lack of "objective clinical diagnostic testing" in Dr. Nguyen's opinion about Bui's mental impairments limitations. Def.'s Mem. 15. The Commissioner contends that there was a "stark contrast" between Dr. Nguyen's treatment notes and his later opinion. Id. Thus, the Commissioner asserts, the "assignment of weight to the record medical opinions is supported by substantial evidence." Id. at 14.

The Court holds that it is not. First, the hearing officer found that Dr. Nguyen's opinion was not supported by the record's evidence since "mental status exams show no evidence of cognitive dysfunction or thought disorder." Admin. R. 38-39. Dr. Nguyen diagnosed Bui with severe PTSD, anxiety and

depression, the same medical impairments that the hearing

officer later also found to be severe.  Id. at 628, 637.  Dr.

Nguyen never referred to "significant mental limitations," as

the Commissioner argues.  Def.'s Mem. 15.  As Bui points out,

Dr. Nguyen found that Bui's medical impairments produced a

"limited area of dysfunction".  Reply Mem. 5.  Dr. Nguyen

averred that Bui's functional limitations were related to her

working abilities and not to an ability to conduct her own life.

Admin. R. 1085-86.  According to Dr. Nguyen's report, Bui can

maintain an ordinary routine, carry simple instructions, request

assistance, interact with the general public, respond to changes

and maintain socially appropriate behavior.  Id.  Accordingly,

the hearing officer misunderstood Dr. Nguyen's opinion and the

limitations to which it referred.

Second, the hearing officer found an inconsistency between

Dr. Nguyen's findings and Bui's stable mood.  Admin. R. 39.

Specifically, the hearing officer found inconsistencies with Dr.

Nguyen's consistent evaluation of Bui's score GAF as 60[3] and his

opinion of significant mental limitations.  Id.  Bui alleges

that the limitations are consistent with a GAF of 60.  Pl.'s

---

[3] A GAF score of 60 indicates "[m]oderate symptoms . . . OR
moderate difficulty in social, occupational, or school
functioning."  American Psychiatric Ass'n, Diagnostic and
Statistical Manual of Mental Disorders 34 (4th ed., text Rev.
2000).

Mem. 13. According to Bui, "[d]espite years of treatment, various psychotropic medications, and [her] compliance with medications, her GAF is consistently 60" and she "continues to exhibit symptoms of anxiety, panic, PTSD and depression." Id.

Courts have ruled that GAF scores should be used for "treatment purposes and not for rating a person's ability to work." Deck v. Colvin, 588 F. App'x 747, 748 (9th Cir. 2014), see also Martinez v. Colvin, 13-cv-30124-KPN, 2014 WL 3735889, at *3 (D. Mass. July 11, 2014) (Neiman, M.J.) (noting that "'GAF scores have been deemed unreliable' by the Social Security Administration itself" (quoting Hall v. Colvin, 18 F. Supp. 3d 144, 153 (D.R.I. 2014))). After the American Psychiatric Association stopped using the GAF scores as a diagnostic technique, see American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013), the Social Security Administration published Administrative Memorandum AM-13066 saying that "[b]y itself, the GAF cannot be used to 'raise' or 'lower' someone's level of function." See Lopez-Lopez v Colvin, 144 F. Supp. 3d 260, 262 (2015) (Kelley, M.J.) (first quoting Lane v. Colvin, No. C13-5658-MJP, 2014 WL 1912065, at *9 (W.D. Wash. May 12, 2014)(then quoting AM-13066)). In Bourinot v. Colvin, 95 F. Supp. 3d 161 (D. Mass. 2015) (Hillman, J.), however, the Court held that relying on GAF scores was not legal error when supported by

other evidence.  Id. at 178.  Nonetheless, the only information

that GAF scores give in this case is that Bui's symptoms are

moderate after years of treatment.  Admin. R. at 39.  Her

limitations, however, as the hearing officer explained, are

still severe.  Id. at 24.  In the last appointment Bui had with

Dr. Nguyen, Dr. Nguyen said that she continued to show symptoms

of PTSD, depression, and anxiety.  Id. at 689-90.  In

conclusion, Bui's stable condition is not inconsistent with the

limitations that Dr. Nguyen asserts.

Third, the hearing officer found inconsistencies between

Dr. Nguyen's findings and Bui's activities of daily living.  Id.

at 39.  Bui testified that she could take care of herself and

her daughter, prepare meals and do household chores, drive, take

public transportation, shop, and take her daughter to school.

Id. at 63-64.  Bui argues that the abilities needed in the

workplace are different from the ones needed to perform

activities of daily living.  Reply Mem. 6.  The marked and

moderate limitations found by Dr. Nguyen do not interfere with

Bui's ability to perform activities at her own pace and time.

Id.; see SSR 85-15 (S.S.R. Cum. Ed. 1985).  The Social Security

Regulations explain that "[i]ndividuals with mental disorders

often adopt a highly restricted and/or inflexible lifestyle

within which they appear to function well."  SSR 85-15.  Courts

have also reasoned that activities of daily living are more

flexible and require less concentration and persistency than full time jobs. See Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012); Waters, 709 F. Supp. at 284. Accordingly, the Commissioner is correct that Bui's mood is stable and that she performs various activities of daily living.

None of these findings, however, contradict Dr. Nguyen's opinion. Nor did Dr. Nguyen ever suggest that Bui had a cognitive limitation. Therefore, the limited weight given by the hearing officer to Dr. Nguyen's opinion is not supported by substantial evidence, resulting in a flawed residual functional capacity finding.

### 2. Weight Given to Dr. Keuthen's Opinion

In his assessment, the hearing officer gave "great weight to the opinions of the reviewing [disability determination services] medical and psychological consultants." Admin. R. 39. According to the Commissioner, that conclusion does not apply to Dr. Jampel's opinion, which was only given "some weight." Def.'s Mem. 14. The Commissioner states that "great weight" was given to Dr. Keuthen's medical opinion. Id. Dr. Keuthen was a non-treating and non-examining psychologist. Admin. R. at 99-100. Dr. Keuthen wrote "Cl's anxiety/depression, coupled with her hepatitis related fatigue, would hamper ability to attend to work tasks and maintain a work pace." Admin. R. 103. Dr. Keuthen concluded that Bui "could focus for two-hr period during

an eight-hr day in an unpressured setting." Id. The hearing
officer concluded that Bui could maintain concentration,
persistence and pace on "simple tasks" for two-hour periods in
an eight-hour day. Id. at 28.

Bui argues, however, that "simple work" is not the same as
"unpressured work." Reply Mem. 7. Social Security Regulation
85-15 states that "the skill level of a position is not
necessarily related to the difficulty an individual will have in
meeting the demands of the job." SSR 85-15. This is because
"[t]he reaction to the demands of work (stress) is highly
individualized, and mental illness is characterized by adverse
responses to seemingly trivial circumstances." Id. The
vocational expert testified that there existed simple task jobs
in the market that Bui could perform. Admin. R. 73-74. Then
the hearing officer added two other separate limitations to the
hypothetical: off-task ten percent of the time or being absent
three times a month. Id. at 74-75. The vocational expert
responded that there were no jobs that the person could perform
with either of those limitations. Id. Both of these
hypotheticals are consistent with what could be considered as
"unpressured work." As Bui points out, an unpressured setting
could "include work that does not have production quotas, work
that allowed for breaks . . . and work with a supportive
supervisor." Reply Mem. 7. Therefore, the hearing officer

failed to analyze properly Bui's ability to perform work in an unpressured setting.

Ultimately, Dr. Keuthen's and Dr. Nguyen's opinions are generally consistent. They both concluded that Bui's social functioning and her activities of daily life are not significantly limited. Admin. R. 103, 1086-87. The two doctors also agreed that Bui had limitations in maintaining concentration, persistence and pace. Id. They both thought that Bui can concentrate for periods of two hours in an unpressured setting. Id. Thus, besides Dr. Nguyen's conclusion that Bui could not work full time, there does not seem to be an obvious contradiction between the two doctors' conclusions. Comparing these two medical opinions, the conclusion that Bui could perform a full range of simple work does not seem to be fully supported by Dr. Nguyen and Dr. Keuthen's opinions.

Bui asks this Court to reverse or remand the Commissioner's decision. A court may order reversal "in the unusual case in which the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or deny benefits." Seavey, 276 F.3d at 11. Here, the agency inappropriately weighed medical opinions and did not properly determine Bui's residual functional capacity. In other words, "an essential factual issue has not been resolved . . . and

there is no clear entitlement to benefits." Id. Accordingly, this Court can only remand this issue for further proceedings.

### C. Hand Tremor as a Medically Determinable Impairment

Bui argues that the hearing officer erred in determining that her essential hand tremor is a non-medically determinable impairment. Pl.'s Mem. 15. The hearing officer found that it was not a medically determinable impairment because there was "no evidence of any treatment for or diagnosis for her hand tremor." Admin. R. 26. He stated that it had been "mentioned merely as an observation." Id. The hearing officer also expressed in his decision that he did not observe the tremor for the whole hour of the hearing. Id. Bui explains that even though Dr. Nguyen's initial diagnosis of the hand tremor is not in the record, it was observed in every appointment with Dr. Nguyen. Pl.'s Mem. 15-16 (citing Admin. R. 577, 580, 637, 689, 750, 764, 800, 843, 914, 917, 940, 943, 947, 951, 1004). The tremor was also observed by other physicians: Dr. Jampel, Dr. Thakur, Dr. Stefanidous, and the nurse practitioner, Vogel. Id. at 16 (citing Admin. R. 618, 878, 973, 1023). Since the hearing officer determined that the hand tremor was not a medically determinable impairment, he did not analyze its severity. See id. at 26-28.

According to the Social Security Regulations in effect at the hearing, a physical impairment "must be established by

medical evidence consisting of signs, symptoms, and laboratory findings, not only by [petitioner's] statement of symptoms." 20 C.F.R. § 416.908.[4] Signs are "abnormalities which can be observed, apart from [claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." Id. § 416.928(b).[5] Bui argues that there is no diagnostic test for essential tremors. Pl.'s Mem. 15.

An essential tremor is a nervous system condition "that causes involuntary and rhythmic shaking." Essential Tremor, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/essential-tremor/symptoms-causes/syc-20350534 (last visited Apr. 23, 2018). "There are no medical tests to diagnose essential tremor. Diagnosing it is often a matter of ruling out other conditions that could be causing [one's] symptoms." Id. It seems that the only way to diagnose an essential tremor is by observing it. See id. Bui testified in the hearing that she would drop things because of her hands shaking. Admin. R. 57. The hand tremor, however, is not only referenced in Bui's

---

[4] This regulation has been withdrawn but was in effect at the time of the hearing officer's decision on March 28, 2016. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); Admin. R. 41.

[5] This regulation has also since been withdrawn but was in effect when the hearing officer ruled. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); Admin. R. 41.

statements. Various physicians, including doctors Thakur and Jampel, observed the tremor in 2014 and 2015. Id. at 618, 1022. Also, in 2014, neurologist Dr. Stefanidous observed the tremor and prescribed a beta-blocker to help with the headaches and the tremor. Id. at 973. Dr. Nguyen found that the hand tremor produced manipulative limitations. Id. at 1087.

The hearing officer said that he did not observe the hand tremor during Bui's hearing. Id. at 26. It was improper for the hearing officer to impose his own observation and dismiss the observations of medical professionals. See Manso-Pizarro, 76 F.3d at 17. Also, courts consistently have ruled that a claim cannot be dismissed solely on the basis of a hearing officer's observations at the hearing. See Miller v. Sullivan, 953 F.2d 417, 422 (8th Cir. 1992); Weaver v. Sec'y of Health & Human Servs., 722 F.2d 310, 312 (6th Cir. 1983); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). In addition, since a hand tremor "worsen[s] with movement" it would not necessarily be observable in a hearing. Essential Tremor, Mayo Clinic, supra. It was thus inappropriate for the hearing officer to base his decision on a "sit and squirm test." See Weaver, 722 F.2d at 312.

In her memorandum, the Commissioner argues that, as the hearing officer concluded, there was no specific treatment for the hand tremor in the period in which the hearing officer was

conducting his evaluation.  Def.'s Mem. 12-13.  Thus, according
to the Commissioner, the hearing officer correctly concluded
that it was not a "debilitating condition."  Id.  But this
argument contests the severity of the impairment.  The
conclusion in question, however, is the hearing officer's
classification of the essential tremor as a medically
determinable impairment, not the determination of its severity.
Since the hearing officer did not find that it was a medically
determinable impairment, he did not go on to analyze its
severity.

     The Commissioner also alleges that the treatment that
Dr. Nguyen gave Bui for her hand tremor in 2011 was already
analyzed by the Court in a previous disability claim, which was
only allowed on the basis of her mental impairments.  Def.'s
Mem. 12 n.3.  Therefore, according to the Commissioner, if there
is no evidence that the condition has worsened Bui would be
precluded from asserting the issue anew.  Id.  The record lacks
sufficient evidence to support the issue preclusion claim,
however.  First, the Commissioner makes this argument in a
footnote and does not produce the 2011 decision.  Id.  The
Commissioner relies instead on a 2014 Disability Determination
Services evaluation indicating that Bui's previous disability
claim was approved for "psych."  Admin R. 103.  Second, an
approval on psychiatric grounds, without more, does not mean

that a claim premised on the hand tremor was denied. Therefore, there is insufficient evidence for the Court to conclude that Bui is precluded from asserting this claim.

The last argument the Commissioner presents to defend the conclusion that the hand tremor is not a medically determinable impairment is the lack of diagnosis. A medically determinable impairment can be established by offering "objective medical evidence." 20 C.F.R. § 404.1513(a). As explained above, there are no objective tests for essential tremors beyond mere observation and the ruling out of other conditions that could be the cause. Other conditions, such as fibromyalgia, also present "an additional layer of complexity . . . elud[ing] diagnostic laboratory tests." Sinclair v. Berryhill, 266 F. Supp. 3d 545, 552 (D. Mass. 2017). In fibromyalgia cases, the Social Security Administration has allowed hearing officers to review the medical notes and has identified two different methods to review a diagnosis of fibromyalgia. Id. Therefore, the hearing officer was incorrect to dismiss the essential tremor solely because Dr. Nguyen's first diagnosis of the hand tremor was not in the record. Had the tremor been considered a medically determinable impairment, it necessarily would have changed the residual functional capacity finding and the type of jobs Bui could perform. Further, if upon reconsideration the hearing officer again concludes that the hand tremor is a non-medically

[33]

determinable impairment, the hand tremor ought be considered a symptom of Bui's other medical conditions, as the Court explains further in the next section.

### D. Subjective Symptoms

Bui alleges that the hearing officer did not consider her pain and subjective symptoms, which her treating providers have found to be chronic and severe. Pl.'s Mem. 17. The hearing officer concluded that Bui could perform a "full range of work at all exertional levels" limited to simple tasks and with some non-exertional limitations. Admin. R. 28; Pl.'s Mem. 17. According to the Social Security Regulations, the hearing officer must look at the claimant's symptoms, including pain, when analyzing the residual functional capacity. 20 C.F.R. § 416.929. Bui cites the two-step test for analyzing pain outlined in Avery v. Secretary of Health & Human Services, 797 F.2d 19, 21-22 (1st Cir. 1986). Pl. Mem. 17-18. At the first step, objective medical evidence must demonstrate the existence of a medical condition that can cause pain. Avery, 797 F.2d at 21-22. At the second step, the hearing officer assesses the pain's severity. Id.

Bui asserted that her symptoms preclude her from performing sedentary work. Pl.'s Mem. 19. The hearing officer, however, does not have to accept her conclusions and can perform a credibility analysis on his own. In this case, the hearing

[34]

officer found the effects of Bui's symptoms not to be entirely credible. Admin. R. 37. The hearing officer also wrote a three-page analysis of her subjective symptoms. Id. at 35-37. There, the hearing officer followed the Avery guidelines, analyzing Bui's symptoms and pain. Id. He analyzed Bui's considerable daily activities, her stable mood, the lack of hospitalization, and the minimal treatment of her dizziness. Id. The court defers to the hearing officer's assessment of Bui's testimony as to the limitations caused by her medical conditions. See Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the [hearing officer] . . . is entitled to deference, especially when supported by specific findings.").

Nevertheless, for the hearing officer's assessment to receive deference, it must analyze all of the claimant's symptoms. 20 C.F.R. § 416.929. In her testimony, Bui explained that her mental impairments were producing her hand tremor. Admin. R. 57. Consequently, the hearing officer failed to recognize the hand tremor as a symptom of the mental impairments, even were it not itself a medically determinable impairment, and thus he failed to analyze its severity. The hearing officer must weigh all the evidence, including the claimant's subjective symptoms, to assess the severity of the claimant's medical condition and arrive at a reasonable residual

[35]

functional capacity determination. <u>Avery</u>, 797 F.2d at 27. The decision must therefore be remanded so that the hearing officer can also analyze the effects produced by the hand tremor. The hearing officer also ought address the credibility of Bui's testimony regarding the limitations produced by her hand tremor.

### E. Communication in English

Bui argues that the finding that she is capable of communicating in English is not supported by substantial evidence. Pl.'s Mem. 19. The Commissioner agrees that this was error but argues that it is not sufficient basis for remanding. Def.'s Mem. 19. Bui also agrees that this error by itself would not warrant reversal or remand. Reply Mem. 9. Bui alleges, however, that this needs to be addressed if a new decision is to be made. <u>Id.</u> Since the case is being remanded, this finding should also be corrected in the future decision.

## IV. VI. CONCLUSION

For the foregoing reasons, the Commissioner's decision is VACATED, and the matter is REMANDED to the hearing officer for further proceedings consistent with this memorandum and order. On remand, the hearing officer should clarify his reasons for discounting Dr. Nguyen's opinion, or, alternatively, give Dr. Nguyen's assessment controlling weight and modify the residual functional capacity accordingly. The hearing officer should consider the medical observations made about the hand tremor and

analyze it as a medically determinable impairment or, alternatively, analyze its severity as a symptom of other impairments. The Court also requires that the hearing officer correct the finding that Bui can communicate in English. Bui's motion to reverse or remand is GRANTED to the extent that the Court orders the above relief. The Commissioner's motion to affirm is DENIED.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE